MICHAEL QUINN AS ADMINISTRATOR, ETC., OF JOHN FAHEY, DECEASED, RESPONDENT, *v.* GEORGE H. POWER, APPELLANT.

*What is a departure by a servant from the business of his master.*

The defendant was the owner of a ferry boat run by his employees between the city of Hudson and the village of Athens. On June 10, 1874, the pilot of the boat took from the dock, at Athens, a man who had been left there by a tow which had landed there and was then continuing its way up the river, and agreed, as a favor, to carry him to, and leave him on the tow. This was done; when through the negligence of those in charge of the ferry boat, she collided with a canal boat, attached to the tow, whereby the plaintiff's intestate was thrown from the said canal boat and drowned.

*Held,* that the employees of the ferry boat had, without authority, departed from the business of their master, the defendant, and that he was not responsible for their negligent acts. (Per BOCKES, J.)

That in any event the question, whether or not the defendant's employees had departed from their master's business, should have been submitted to the jury. (Per BOARDMAN, J.)

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover for the killing of plaintiff's intestate, alleged to have been caused by the negligence of the employees of the defendant. The defendant was the lessee of the ferry between the city of Hudson and the village of Athens, in the Hudson river, and the owner of the steam ferry boat "George H. Powers," which was used thereon and run by his employees.

On June 10, 1874, the steamer " Ohio " with a tow of canal boats had stopped at Athens, and subsequently started on its way to Albany. One of the crew had been left on the dock at Athens. The pilot of the ferry boat, which was leaving the dock, told him to get on the boat and that he would leave him on the tow. He did so and was left on a canal boat. Afterwards the ferry boat struck one of the canal boats attached to the tow, and threw the plaintiff's intestate from such boat into the water, where he was drowned.

*Newkirk & Chace,* for the appellant.

*Jesse Johnson* and *D. M. De Witt,* for the respondent.

BOCKES, J. :

The case is not decidedly in favor of the plaintiff on the question of the negligence of the defendant's servants who had the ferry boat in charge, but it may be well claimed, perhaps, that a case was made proper for the consideration of the jury in that regard. It is somewhat difficult to point out any act of negligence on the part of the master, pilot or crew of the boat, which necessarily or in fair probability, caused or contributed to produce the death of the deceased. The strength of the evidence is to the effect that the ferry boat was not moving at the time of the accident, and that the canal boat, from which the deceased was thrown by the collision, struck the former as it passed while being towed on its way. It is urged that the ferry boat (a steamer) was master of its own movements, and should have kept out of the way of the canal boat, which was less under control of those having it in charge. But, on the other hand, it should be made very clearly to appear, in order to establish negligence against those in charge of the ferry boat on this ground, that the canal boat was so situated and so moving as to make it apparent or probable to those in charge of the ferry boat, that the former would not pass without collision under proper and careful handling.

There was, however, a collision between the vessels, and the plaintiff's intestate was thereby cast from the canal boat into the river and drowned. On the whole, without suggestion or specu-lation as to theories of probable action, or of duty on the part of

those in charge of the respective boats, or attempting to collate the evidence submitted bearing upon the conduct of those parties in their management of them, it must suffice here to declare my conclusion that a case was made for the jury on the evidence, as to the negligence of those having control of the colliding vessels.

A more serious difficulty, however, lies in the way of a recovery against the defendant by reason of the alleged negligence of those having his boat in charge.   It is insisted on the part of the defendant's counsel that, at the time of the collision, those having the management of the ferry boat had departed from their line of duty in their master's business, and were then engaged in an unauthorized act beyond the scope of their employment ; hence that the defendant was not liable for their negligent conduct.   I am unable to perceive how this point of difficuly can be overcome. Those persons having the ferry boat in charge were employed by the defendant to run her on the ferry between Hudson and Athens ; and they had no authority to employ the boat in any other service, except occasionally on some special use (unlike that in which they then employed her), when such special use would not interfere materially with the work of the ferry.   While on ferry duty, as at this time, they had no authority to take other than ferry-passengers who were to be carried from shore to shore. It seems that on the occasion of the accident a person on the dock wished a favor.   He had been left on shore from a canal boat then in tow in the river and moving away, which being observed by the pilot of the ferry boat, the latter invited him on board, promising him, and as a favor, to put him on board the tow.   In so doing the ferry boat was taken off her course up stream, and the man was by such accommodation enabled to get on board the tow ; whereupon the collision occurred which caused the death of the deceased.   The case on all its material facts seems very similar to that of *Cavanagh* v. *Dinsmore* (19 N. Y. S. C. [12 Hun], 465).   There a servant in the employment of the defendant as driver of a truck drove off his course at the request of a third party, and as a personal favor to the latter, and while so off duty to his employer negligently ran over and killed the plaintiff's intestate.   It was held that the driver was not acting in the business of his master at the time of the accident, and that the latter

was not liable for injuries occasioned by his act. It was there said by the court, and this language has direct application to the case in hand, that the departure of the driver from the ordinary route, for the purpose of doing a favor to another, was clearly an unauthorized deviation, and not within the scope of his duty to his employer ; and the entire law applicable to that case, and by direct analogy also to this, is stated in the additional remarks that " it is well-settled that the master is not liable for injuries sustained by the negligence of his servants while engaged in an unauthorized act, beyond the scope and duty of his employment, for his own or another's purpose, although the servant is using the implements or property of the master in such unauthorized act." The authorities in vindication of this sound principle are numerous ; and many are given in the case cited (page 468), and they need not, therefore, be here repeated by way of reference. It seems indisputable that there was a diversion of the ferry boat by the pilot for a special purpose outside his employment ; and this was equally true, too, as to the captain, if it be admitted that the favor, extended to the man left behind by the tow, was consented to or ratified by him. Neither of them was authorized to run the boat off the ferry for a purpose entirely their own, or to favor one, neither soliciting or accepting any right pertaining to a ferry-passenger. The decision in *Cavanagh* v. *Dinsmore* seems conclusive of this case, and is sound in principle.

This conclusion renders it unnecessary to consider other subjects of alleged error occurring during the trial.

Judgment and order appealed from reversed ; new trial granted, costs to abide the result.

BOARDMAN, J. :

I concur in the result of this opinion. If, as a matter of law, the defendant was not legally exempt from liability, I am inclined to think that under all the evidence given it was a question of fact for the jury to determine whether the defendant's servants were acting within the scope of their authority and duty. (*Rounds* v. *D., L. and W. R. R. Co.*, 64 N. Y., 129–137; *Jackson* v. *Second Avenue. R. R. Co.*, 47 id., 274, 277. If I am correct in this the court erred in deciding as a legal question that the act done

was within the scope of the servants' employment, and in the discharge of their duty to the defendant.

Learned, P. J., dissented.

Judgment reversed, and new trial granted, costs to abide event.